Dan STILL, Acting Commissioner of the New York City Dept. of Mental Health, Mental Retardation and Alcoholism Services; the New York City Dept. of Mental Health, Mental Retardation, & Alcoholism Services; the City of New York, Petitioners–Appellants,

v.

Barbara A. DeBUONO, as Commissioner of the New York State Dept. of Health; The New York State Dept. of Mental Health; Mr. " ", on behalf of "E.M.", an infant, Respondents–Appellees.

No. 732, Docket 96–7753.

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1996.

Decided Dec. 5, 1996.

Joseph I. Lauer, New York City (Paul A. Crotty, Francis F. Caputo and Elizabeth A. Wright, Corporation Counsel of the City of New York, on the brief), for Petitioners–Appellants.

Steven S. Anderson, New York City (Donna R. Shahrabani, Anderson & Rottenberg, on the brief), for Respondent–Appellee Mr. " ".

Kay–Ann D. Porter, Assistant Attorney General, State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, Thomas R. Sofield, Assistant Attorney General, State of New York, of counsel), for Respondent–Appellee DeBuono and the New York State Department of Health.

Before: WALKER, JACOBS, Circuit Judges, and CARMAN, Chief Judge United States Court of International Trade, sitting by designation.*

CARMAN, Chief Judge.

## BACKGROUND

On February 22, 1992, Mrs. " " gave birth to her son "E.M.". Around the time of his second birthday, Mr. and Mrs. " " became increasingly concerned about "E.M."'s development. "E.M."'s ability to speak was very slow to develop and he had very little language comprehension. Based on these symptoms and concerns, Mrs. " " made arrangements to have "E.M." evaluated by a developmental pediatrician and other specialists affiliated with the New York City Early Intervention Program. "E.M." was examined on July 26 and 27, 1994 by a developmental pediatrician, a speech and language pathologist, and a psychologist at New York Hospital, Cornell Medical Center. Following their examination, the specialists diagnosed "E.M." as being afflicted with Developmental Delay and secondarily with Pervasive Developmental Disorder, more commonly known as autism. This diagnosis qualified "E.M." for early intervention services under New York law.

Following this diagnosis, an Individualized Family Service Plan (IFSP) was drafted to establish goals for "E.M."'s treatment and to specify how much and what types of treatment he would receive through the Early Intervention Program. During the preparation of "E.M."'s IFSP, Mrs. " " requested that "E.M." receive Applied Behavioral Analysis (ABA) as part of his treatment. Dr. Evelyn Lipper, a developmental pediatrician who examined "E.M." to determine his eligibility for early intervention services, recommended to Mr. and Mrs. " " that "E.M." receive ABA therapy. Mrs. " "'s request for ABA was not accommodated, however, because the New York City Early Intervention Program did not provide ABA therapy to autistic children under the age of three years old. Instead, "E.M."'s IFSP provided for five hours of treatment per week at the Child Development Center (CDC), a state-approved provider of early intervention services. The five hours of treatment consisted of social work in parent-child groups, special instruction in group and individual settings, and speech therapy.

Despite their inability to obtain ABA therapy through the DOMH's early intervention program, Mr. and Mrs. " " continued to be interested in providing "E.M." with those services. In September 1994, Mr. and Mrs. " " arranged and paid for "E.M." to receive in-home ABA therapy under the direction of Ms. Julie Fisher, a social worker who holds a Masters degree in social work from New York University. Ms. Fisher was responsible for designing the behavioral modification techniques used in "E.M."'s treatment, as

* The Honorable Gregory W. Carman, Chief Judge, U.S. Court of International Trade, sitting by designation, became Chief Judge after oral argument.

well as training six college students and Mr. and Mrs. " " to provide ABA to "E.M.". The six students Ms. Fisher trained were not licensed, certified or registered professionals, nor were they designated as early intervention service providers by the State Commissioner of Health. Initially Ms. Fisher and the six college students provided "E.M." with approximately ten hours of ABA therapy per week, and by the Spring of 1995 "E.M." was receiving approximately twenty hours of treatment per week.

Based on the progress they believed "E.M." was making through ABA therapy, Mr. and Mrs. " " decided to stop sending "E.M." to CDC. Mr. and Mrs. " " withdrew "E.M." from CDC in late January or early February 1995, and his IFSP subsequently was modified to discontinue services from CDC and to provide for individual speech and language therapy at Lennox Hill Hospital.

On March 31, 1995, Mr. " " requested an impartial administrative hearing seeking reimbursement for his expenses in providing "E.M." with in-home ABA therapy. Although the New York City DOMH agreed during the impartial hearing before State Department of Health Administrative Law Judge Zylberberg to reimburse Mr. " " for the services provided by Ms. Fisher, it continued to contest Mr. " "'s claim for reimbursement of costs incurred in hiring the six uncertified students to provide ABA to "E.M.".

Administrative Law Judge Zylberberg issued a Determination and Order on August 15, 1995, finding substantial evidence established "E.M."'s IFSP was not appropriate and did not meet his developmental needs. Judge Zylberberg noted there was agreement at an August 1994 IFSP meeting that "E.M." should receive ABA therapy. Judge Zylberberg also noted the DOMH conceded "E.M."'s IFSP was not appropriate and that the DOMH had agreed previously to reimburse Mr. " " for the ABA services provided to "E.M." by Ms. Fisher.

Judge Zylberberg's order also found "E.M."'s progress was substantially attributable to the ABA therapy. Based on the report of a physician who evaluated "E.M.", as well as his conclusion that ABA is consistent with the legislative goals of the Early Intervention Program, Judge Zylberberg found the in-home ABA services were appropriate treatment for "E.M.".

Finally, Judge Zylberberg found none of the six students providing therapy to "E.M." met the statute's definition of a "qualified" provider. Nonetheless, Judge Zylberberg ordered the DOMH to reimburse Mr. " " for his expenses in compensating the students, opining the students would have been certified as "qualified" providers had they applied to the Early Intervention Program.

On December 14, 1995, the DOMH filed a petition with the New York Supreme Court, pursuant to Article 78 of the Civil Practice Laws and Rules of New York and N.Y. Pub. Health Law § 2549(7), challenging the Determination and Order issued by Judge Zylberberg. Appellants challenged only the portion of Judge Zylberberg's order that required the DOMH to reimburse Mr. " "'s expenditures incurred in hiring uncertified students to provide ABA services to "E.M.".

Mr. " " filed a Notice of Removal to the United States District Court for the Southern District of New York on January 11, 1996, on the grounds that the claim arose under federal law. Mr. " " subsequently moved to dismiss the petition pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.[1]

On June 10, 1996, Judge Motley entered a final judgment granting Mr. " "'s motion to dismiss the petition and denying petitioner's motion to remand to the New York Supreme

---

1. On February 23, 1996, the New York City Department of Mental Health, Mental Retardation and Alcoholism Services (DOMH) moved to remand the proceeding to the New York Supreme Court, alleging that the removal was improper because Mr. " " failed to obtain consent of the State Department of Health, a respondent in the

Article 78 proceeding before the New York Supreme Court, in the removal petition. Counsel for the DOMH withdrew this aspect of its appeal at oral argument before this Court. Accordingly, the removal issue is no longer subject to review, and that portion of the appeal is dismissed.

Court.[2] On June 19, 1996, appellants filed a Notice of Appeal challenging the District Court's dismissal of its claim for failure to state a claim upon which relief may be granted and its failure to remand the case to the New York Supreme Court.

This case presents the question of whether, upon the state's failure to provide disabled infants or toddlers appropriate services under part H of the Individuals with Disabilities Education Act, due to a shortage of providers who have been licensed or certified by the state, parental procurement of services otherwise appropriate under part H is reimbursable notwithstanding the providers' lack of state certification.

## DISCUSSION

This Court reviews the grant of a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) *de novo. See Grimes v. Ohio Edison Co.,* 992 F.2d 455, 456 (2d Cir.1993). Our review must accept the allegations contained in the petition as true, and draw all reasonable inferences in favor of the non-movant. *See Allen v. West-Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Dismissal is appropriate only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–85 (1994), establishes the standards states must meet in providing education services to disabled infants and children in order to receive financial assistance from the federal government. Part H of the IDEA requires states to provide "appropriate early intervention services to all infants and toddlers with disabilities and their families." 20 U.S.C. § 1476(a) (1994). The statute defines "infants and toddlers with disabilities" as "individuals from birth to age 2, inclusive." 20 U.S.C. § 1472(1) (1994). Similarly, states must pro-

vide "a free appropriate public education" to disabled individuals between the ages of three and twenty-one years old to be eligible to receive federal funds under part B of the IDEA. 20 U.S.C. § 1412(1), (2)(B) (1994).

Two decisions by the United States Supreme Court have interpreted language in the Education of the Handicapped Act, the IDEA's precursor, as well as part B of the IDEA to grant reviewing courts the authority to order reimbursement of expenditures made by parents to obtain appropriate educational services for their handicapped children where the services provided by the state are inappropriate. *Burlington School Comm. v. Mass. Dep't. of Ed.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), held reviewing courts have the authority under the Education of the Handicapped Act to order reimbursement of parents for expenditures made to provide their children with appropriate private special education if the state-provided services are determined to be inappropriate. *Burlington* establishes a two-factor test which must be satisfied before a reviewing court can order reimbursement of parents' expenditures. The reviewing court must determine: (1) the state-provided services made available pursuant to an Individualized Education Program (IEP) are inadequate; and (2) the private education services obtained by the parent are appropriate. *Burlington School Comm.,* 471 U.S. at 370, 105 S.Ct. at 2002–03. Once these elements are established, the reviewing court's authority to order "appropriate" relief, pursuant to 20 U.S.C. § 1415(e)(2) (1994) (reviewing courts are empowered to "grant such relief as the court determines is appropriate"), includes the authority to order reimbursement for expenditures made to obtain appropriate educational services.

The Supreme Court also has addressed the authority of reviewing courts under part B of the IDEA to order reimbursement of expenditures incurred in obtaining private educational services that are otherwise proper but which fail to satisfy

2. Courts reviewing administrative determinations under part H of the Individuals with Disabilities Education Act are empowered to "hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1480(1) (1994).

the IDEA's requirement that services provided under part B meet standards established by the state Department of Education. *Florence County School Dist. Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), held reviewing courts have the authority to order reimbursement of privately purchased educational services that are appropriate under the IDEA but which fail to meet the standards of the state Department of Education as required by 20 U.S.C. § 1401(a)(18)(B). The Supreme Court reasoned the parental right of unilateral withdrawal cannot be eliminated by a state requirement that limits parental choice to inappropriate services. *Florence County School Dist. Four*, 510 U.S. at 13–14, 114 S.Ct. at 365–66. This holding builds on the Court's decision in *Burlington*, establishing that once the *Burlington* two-factor test is satisfied, parents can obtain reimbursement for privately obtained educational services, even if those services do not fully satisfy the state educational agency's standards.

These cases—construing an analogous provision of the IDEA—guide our approach to the case at hand. Although the part H provisions of the Act at issue here and those of part B at issue in *Burlington* and *Florence County* are distinct in notable respects, their basic structure and purpose are strikingly similar: both define the population to be served, 20 U.S.C. § 1401(a)(1) (1994) (part B: "children with disabilities"), 20 U.S.C. § 1472(1) (1994) (part H: "infants and toddlers with disabilities"); both define the nature of the service to be provided, 20 U.S.C. § 1401(a)(18) (1994) (part B: "free appropriate public education"), 20 U.S.C. 1472(2) (1994) (part H: "early intervention services"); both establish mechanisms via which the state must provide such services, 20 U.S.C. § 1401(20) (1994) (part B: "individualized education program"), 20 U.S.C. § 1477 (1994) (part H: "individualized family service plan"); and both empower courts (in identical language) to effectuate the purposes of the Act, 20 U.S.C. § 1415(e)(2) (1994) (part B), 20 U.S.C. § 1480(1) (1994) (part H). Moreover, both provisions are animated by similar impulses, 20 U.S.C. § 1400(b), (c) (1994) (noting that part B was intended, *inter alia*, to enable disabled children to participate equal-ly in society), 20 U.S.C. § 1471(a)(1) (1994) (noting, *inter alia*, need to "enhance the development of infants and toddlers with disabilities and to minimize their potential for developmental delay"). Accordingly, the principles underlying *Burlington*—that courts have broad equitable power to effectuate the purposes of the Act—and *Florence County*—that courts' equitable authority to effectuate the purposes of the Act is not strictly limited to provision of state certified service—fit well in the context of part H.

■ Appellants did not challenge Administrative Law Judge Zylberberg's finding that "E.M."'s IFSP was inappropriate or that ABA services were an appropriate therapy for "E.M.". Appellants challenge only that portion of Administrative Law Judge Zylberberg's order which required reimbursement of Mr. " "'s expenses in hiring uncertified students to provide "E.M." with ABA services. Indeed, appellants agreed to reimburse Mr. " " for expenses incurred in compensating Ms. Fisher for the ABA services she supplied to "E.M.". Additionally, appellants' counsel conceded at oral argument that neither the inappropriateness of "E.M."'s IFSP nor the appropriateness of ABA services was an issue on appeal before this Court. Thus, this case presents the purely legal question of whether parental procurement of otherwise appropriate services for their infants or toddlers are reimbursable notwithstanding the providers' lack of proper qualifications under part H, when the state's denial of appropriate services was due to a shortage of qualified providers.

While appellants concede the *Burlington* two factor test has been satisfied, they assert the language in 20 U.S.C. § 1472(2)(F) (1994), specifying that early intervention services be provided by "qualified" personnel, precludes ordering reimbursement of Mr. " "'s expenses incurred in privately obtaining educational services from uncertified student providers. Appellants additionally argue the legislative history and regulations accompanying the IDEA, as well as the relevant statutory and regulatory provisions under New York law, preclude a reviewing court from ordering reimbursement for expenses

incurred in hiring "unqualified" providers of ABA services.

This Court reads 20 U.S.C. § 1472(2)(F) to impose a clear requirement that states must provide early intervention services through qualified personnel. However, when states fail to deliver appropriate services due to a shortage of providers who have been licensed or certified by the state, strict adherence to the statute's requirement that qualified (i.e., licensed or certified) personnel administer early intervention services even in cases when parents seek out and procure such services would place an unreasonable burden on a parent's ability to obtain for a child the educational services of providers who are proficient, but not licensed or certified. Such a burden is inconsistent with the remedial purpose of the statute. Here, counsel for the City conceded at oral argument that ABA was denied because there is or was a shortage of qualified providers. The Supreme Court, in addressing parental placements under part B of the IDEA, noted, " 'it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place.' " *Florence County School Dist. Four,* 510 U.S. at 14, 114 S.Ct. at 365 (quoting *Carter v. Florence County School Dist. Four,* 950 F.2d 156, 164 (4th Cir.1991)). Similarly, the promise of the IDEA would be defeated if reimbursement were barred because the privately obtained ABA providers are unqualified, when the very reason ABA was not provided by the state was a shortage of such qualified individuals.

Nothing in the legislative history of part H of the IDEA is to the contrary. The citations to legislative history offered by the City consist of barely adorned congressional summaries of particular sections of part H. For instance, the first excerpt the City relies upon, H.R.Rep. No. 99–860, at 8, *reprinted in,* 1986 U.S.C.C.A.N. 2401, 2409, simply rehashes the requirements of 20 U.S.C. § 1472(2)(F) (defining "early intervention services"); the second excerpt from the history, H.R.Rep. No. 99–860, at 10, *reprinted*

*in* 1986 U.S.C.C.A.N. at 2411, simply elaborates the requirements of 20 U.S.C. 1476(b)(8) (concerning the training of state service providers under part H); and the third excerpt, H.R.Rep. No. 99–860, at 10, *reprinted in* 1986 U.S.C.C.A.N. at 2411, simply rehashes (almost verbatim) the requirements of 20 U.S.C. § 1476(b)(13) (concerning state personnel training policies necessary to receive funding under part H). None of these excerpts sheds significant light on the issues before us. The regulatory history relied upon by the City is no more persuasive.

This Court rejects appellants' argument that dismissal of their petition for failure to state a claim will expose the DOMH to financial liability. Local governments should be able to avoid liability exposure simply by providing appropriate services for children at the outset. Furthermore, parents will not be able to seek reimbursement unless the cost of the private services is reasonable. *See Florence County School Dist. Four,* 510 U.S. at 16, 114 S.Ct. at 366 (reviewing court's authority under IDEA to fashion discretionary equitable relief includes consideration of an appropriate and reasonable level of reimbursement). The appropriate amount thus bears a relationship to the quantum of services that the state would have been required to furnish, as well as the fees charged by uncertified providers for their services.

Finally, we note Judge Motley's dismissal relies on the findings of Administrative Law Judge Zylberberg. Both part B and part H contain identical provisions granting a court significant powers in reaching its independent conclusions when reviewing the findings reached in an impartial hearing. *See* 20 U.S.C. § 1415(e)(2) (1994) ("In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."); 20 U.S.C. § 1480(1) (1994) (same). In the present case, however, Judge Motley's dismissal of appellants' claim for failure to state a claim does not conflict with Administrative Law Judge Zylberberg's findings expressed in the Decision and Or-

der. Judge Motley's finding that the actions taken by "E.M." 's parents satisfy the requirements established in *Florence County* is supported not only by her independent determination pursuant to 20 U.S.C. § 1480(1), but also by the findings of Administrative Law Judge Zylberberg.

## CONCLUSION

We affirm the District Court's dismissal for failure to state a claim upon which relief may be granted of appellants' challenge of Judge Zylberberg's order requiring reimbursement of Mr. " " for expenditures to unqualified providers of ABA therapy.