**AFFYMETRIX, INC., Plaintiff,**

v.

**PE CORPORATION (N.Y.); Competitive Technologies, Inc.; Applera Corporation; Perseptive Biosystems, Inc., Defendants.**

No. 01 Civ. 0634(NRB).

United States District Court, S.D. New York.

May 24, 2002.

Ralph C. Dawson, Fulbright & Jaworski, L.L.P., New York City, for plaintiff.

David A. Kalow, David S. Brafman, Kalow & Springut, L.L.P., New york City, for defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff, Affymetrix, Inc. ("Affymetrix"), brings this action for declaratory, injunctive, and monetary relief against defendants PE Corp. (N.Y.) ("PE (N.Y.)"), Competitive Technologies, Inc. ("Competitive Technologies"), Applera Corp. ("Applera"), and PerSeptive Biosystems, Inc. ("PerSeptive"). Affymetrix seeks a declaration that it has not infringed certain patents here at issue and/or that these patents are invalid and unenforceable. Further, Affymetrix asserts claims for breach of contract, attempt and conspiracy to monopolize, and unfair competition. Presently before the Court is defendants' motion to dismiss certain of plaintiff's patent unenforceability claims and contract claims, and to sever and stay the remaining contract-related claims. Further, defendants move to bifurcate and stay the antitrust-related claims pending resolution of the patent claims. For the following reasons, defendants' motion to dismiss is denied and defendants' motion to bifurcate and stay the antitrust-related claims is granted in part and denied in part.

### *BACKGROUND*

As described in Affymetrix's Amended Complaint, the facts are as follows. In September of 1997, Affymetrix entered into a written Purchase Agreement ("the Agreement") with PerSeptive, in which PerSeptive agreed to sell a certain amount of custom amidite products to Affymetrix during each year of the Agreement until December 31, 2005. By its terms, the

Agreement is fully assignable, is governed and interpreted under California law, and provides that with the exception of disputes relating to intellectual property rights, all disputes are to be resolved by arbitration. Under the Agreement, PerSeptive represented that at the time of contracting, PerSeptive knew of no reason that Affymetrix could not use the delivered amidite products to manufacture oligonucleotides using any method contained in Patent No. RE 34,069 ("the '069 patent" or "the Koster patent"). The Agreement further provided that "[i]f for any reason PerSeptive is not able to make or have made the amidites" for a period exceeding 60 days, PerSeptive was to negotiate in good faith with Affymetrix for licensing rights to the '069 patent. Further, PerSeptive represented that at the time of the sale, it knew of no violations of any patents or other intellectual property rights that would prevent Affymetrix from so using the amidite products. PerSeptive was also obligated under the Agreement to indemnify and defend Affymetrix from infringement claims based on use of the amidite products in accordance with the '069 patent.

Shortly before the Agreement was entered, in August of 1997, the Perkin–Elmer Corp., which was later renamed PE Corporation (N.Y.), acquired PerSeptive. Affymetrix received shipments of amidite products from Perseptive until April 15, 1998. Then, PerSeptive failed to deliver the amidite products in response to purchase orders placed in May and June. On one occasion, PerSeptive allegedly shipped the amidite products with improper packaging, which constituted nonconforming goods under the Agreement. This failure to provide conforming goods was never cured. Affymetrix was notified by representatives of PerSeptive that PerSeptive did not intend to fill the orders. Later, in August of 1999, a PE (N.Y.) representative indicated that a PE (N.Y.) affiliate intend-ed to assert a claim that Affymetrix's use of the amidite products to synthesize DNA infringed PE (N.Y.)'s process patents. Affymetrix notified PerSeptive of PE (N.Y.)'s patent infringement allegations in September of 1999 pursuant to the indemnification provisions of the Agreement. However, when Applera, of which PE (N.Y.) is a wholly owned subsidiary, sued Affymetrix for infringement including the use of amidite products sold to Affymetrix by PerSeptive, Perseptive and PE (N.Y.) failed to take up the defense of Affymetrix. Applera, along with Competitive Technologies, sued Affymetrix in early July of 2000 in the District Court of Delaware alleging infringement of five patents: U.S. Patent Nos. 4,458,066 ("the '066 patent"); 4,500,-707 ("the '707 patent"); 5,132,418 ("the '418 patent"); 5,153,319 ("the '319 patent"); and 4,973,679 ("the '679 patent") (collectively, "patents in suit" or "Carruthers patents"). According to Affymetrix's Amended Complaint, PE (N.Y.) purports to have sole and exclusive rights to enforce the patents in suit and Competitive Technologies purports to hold title to each of the patents in suit. When the Delaware action was dismissed in September for lack of subject matter jurisdiction, the parties determined to proceed here with this case, which was filed in January of 2001.

In its Amended Complaint, Affymetrix asserts five causes of action. In Count One, against PE (N.Y.) and Competitive Technologies only, Affymetrix seeks a declaratory judgment that (1) it has not infringed the patents in suit; (2) the patents in suit are invalid for failing to satisfy the requirements set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or under the doctrine of obviousness-type double patenting; and (3) the patents in suit are unenforceable. In Count Two of the Amended Complaint, Affymetrix asserts a breach of contract claim against PerSeptive and PE (N.Y.) based on breach of warranty, PerSeptive's failure to defend

and indemnify Affymetrix from claims resulting from use of the amidite products, and PerSeptive's failure to negotiate in good faith for licensing rights to the '069 patent as required by the Agreement if PerSeptive became unable to deliver amidite products for a period exceeding 60 days. In Count Three, asserted against PE (N.Y.) and Applera, Affymetrix alleges that past legal action taken by these companies against Affymetrix and the fraudulent obtaining and licensing of patents constitute attempts to monopolize by preventing Affymetrix from competing with PE (N.Y.) in the manufacture and sale of DNA probes and other products involving the synthesis of oligonucleotides in violation of the Sherman Act, 15 U.S.C. § 2. Further, in Count Four, Affymetrix asserts that PE (N.Y.), Applera, and Competitive Technologies have conspired to engage in such illegal and exclusionary conduct, in violation of the Sherman Act, 15 U.S.C. § 2, Cal. Bus. & Prof.Code §§ 16722 and 16726, and N.Y. Gen. Bus. Law § 340. Finally, Count Five asserts a cause of action against PE (N.Y.), Applera, and Competitive Technologies pursuant to Cal. Bus. & Prof.Code § 17200 for unfair competition.

Since the patent unenforceability allegations contained in Count One are directly challenged in defendants' motion to dismiss, we describe them in some detail. Affymetrix alleges that PE (N.Y.) and Competitive Technologies intentionally failed to disclose prior art to the Patent and Trademark Office ("PTO"), namely a 1980 article entitled "The Synthesis of Oli-godeoxypyrimidines on a Polymer Support" ("the Article") that was material to the examination of the '066 and '679 patents. Further, Affymetrix alleges that defendants enforced and licensed the '679 patent beyond the date of its expiration while failing to inform the PTO of its error in failing to print a terminal disclaimer notice on the face of the '679 patent.[1] With respect to the '066 patent application, Affymetrix charges that the applicants intentionally concealed the best mode of practicing their invention, as evidenced by the filing of another patent application shortly thereafter in which applicants disclose the use of a saturated secondary amino group as the preferred embodiment. Affymetrix further points to an article published by applicants just prior to filing the '066 application that describes the actual best mode. With respect to the '707,- '418, and '319 patents, Affymetrix alleges that these as well are unenforceable for inequitable conduct in failing to inform the PTO of the best mode. Finally, Affymetrix asserts that the failure to disclose the Article and/or best mode during the '066 patent prosecution also renders the '707,- '418, and '319 patents unenforceable because the '707 patent is a continuation-in-part of the '066 patent, and the '418 and '319 patents are continuations of the '066 patent.

## DISCUSSION

Defendants move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss certain of Affymetrix's claims. First, defendants argue that several of Affymetrix's contract-based

---

1. Plaintiff asserts that during prosecution of the '679 patent, the Examiner rejected the application under an obviousness-type double patenting rejection. In response, applicants submitted a terminal disclaimer, stating that the '679 patent term would not extend beyond the expiration date of the patent granted on Patent No. 4,415,732. However, although the file jacket of the '679 patent application indicates the existence of a terminal disclaimer, the PTO failed to print the terminal disclaimer notice on the face of the '679 patent. PE (N.Y.) and Competitive Technologies never notified the PTO of the mistake, and have sought to enjoin others from practicing the subject matter of the '679 patent beyond the date of its expiration. *See* Am. Compl. ¶¶ 52–62.

claims are not legally cognizable and should be dismissed, and that the remainder of Affymetrix's contract claims should be severed, stayed, and submitted to arbitration pursuant to the mandatory arbitration clause. With respect to Affymetrix's allegations that the patents in suit are unenforceable,, defendants argue that plaintiff's allegations that defendants failed to disclose prior art and best mode to the PTO do not support a claim for inequitable conduct, and are therefore insufficient as a matter of law. Finally, defendants move to bifurcate and stay discovery and trial of the antitrust-related claims pending resolution of the patent issues raised in this case.

## A. Legal Standard

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true all material factual allegations in the complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996); *see Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition to the facts set forth in the complaint, we may also consider documents attached thereto and incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2nd

Cir.1998), as well as matters of public record, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d. Cir.1998).

## B. Contract–Related Claims

■ The Agreement between Affymetrix and PerSeptive for the sale of the amidite products [2] states in relevant part,

PerSeptive warrants and represents ... that at the time of the sale it has not received actual notice of violation of any patents or patent applications ... which, in PerSeptive's opinion, would prevent Affymetrix from purchasing the Products or using them to manufacture oligonucleotides using any method claimed in Patent No. U.S. RE 34,069. Subject to the limitations set forth below, PerSeptive shall defend, indemnify and hold harmless Affymetrix from any suit, claim or proceeding brought against Affymetrix alleging that (i) the structure of any phosphoramidite manufactured by PerSeptive which constitutes a Product, exclusive of any MeNOPC protecting group added thereto, that is purchased by Affymetrix from PerSeptive pursuant to this Agreement, or (ii) the use of any Product in implementing any method of manufacturing oligonucleotides claimed in Patent No. U.S. RE 34,069, infringes any Intellectual Property Rights of others.[3]

As discussed earlier, plaintiff alleges that PerSeptive and PE (N.Y.) violated these provisions of the Agreement by breaching the Agreement. Further, the Agreement states,

PerSeptive shall have no liability for any suit, claim or proceeding brought against Affymetrix or PerSeptive in which and to the extent the alleged infringement arises from the combination of PerSeptive's products . . with products manufactured, included or supplied by Affymetrix or others, or the combination of methods claimed in U.S. RE 34,069 with other methods.

*See* Kalow Decl. Ex. 8, ¶ 10.1.

2. The amidite products, referred to in the Agreement as "Products," are defined as follows: "the five custom amidites which are described in Exhibit A, manufactured by or for PerSeptive or its affiliates and which will be made under ISO '9002' quality systems." Exhibit A is simply a list of the five specific products. *See* Kalow Decl. Ex. 8.

3. The Agreement also limits PerSeptive's liability for intellectual property claims to the purchase price of products purchased under

the express warranty in the Agreement and by failing to defend and indemnify Affymetrix in intellectual property litigation surrounding the use of the amidite products. In their motion to dismiss, defendants argue that Affymetrix's contract claims against PerSeptive and PE (N.Y.) for indemnity and breach of warranty should be dismissed as falling outside the scope of the patent infringement claims raised in the Delaware and current action.[4] Defendants assert that the use of the amidite products sold under the Agreement is not the basis for their claim of patent infringement.[5] Defendants also raise the mandatory arbitration clause in the Agreement as a partial defense to plaintiff's contract claim.[6]

We find defendants' arguments unavailing for several reasons. First, at Oral Argument on April 17, 2002, defendants were unable to articulate any further explanation for their assertion that the underlying claims of infringement of the Carruthers patents are unrelated to the purchase and use of the amidite products in accordance with the Koster patent.[7] Moreover, defendants' assertion that the amidite products sold and used pursuant to the Agreement are unrelated to the patent infringement action directly contradicts plaintiff's carefully-pleaded allegations that subsequent to deliveries of amidite products from PerSeptive to Affymetrix, "Affymetrix was sued by Appelera [sic] and others in the District of Delaware for alleged infringement, including use of amidite Products sold to Affymetrix by PerSeptive." *See* Am. Compl. ¶¶ 34–37.[8] Finally, since the warranty

---

4. Defendants also challenged allegations in plaintiff's Amended Complaint directed towards the Agreement provision requiring PerSeptive to negotiate in good faith with Affymetrix a license to the Koster patent if PerSeptive should for any reason become unable to provide the amidite products. Clearly, whether or not this provision was triggered by PerSeptive's actions is, at least in part, a question of fact. Because Affymetrix's contention that PerSeptive has a continuing obligation under the Agreement to negotiate licensing rights states a claim as a matter of law, it is therefore sustained.

5. As defendants argue, for example, "PerSeptive merely has a duty to indemnify Affymetrix in infringement suits arising out of the sale of amidite 'Products' manufactured by PerSeptive. PE Corp. is not suing Affymetrix based on these 'Products.' " *See* Mem. in Supp. of Defs.' Mot. at 5.

6. While the Agreement makes arbitration of disputes mandatory, it specifically exempts from arbitration those disputes regarding the "validity, construction, interpretation or performance of . . . provisions . . . relating to any Intellectual Property Rights." *See* Kalow Decl. Ex. 8 ¶ 12.7.

7. In fact, when asked at oral argument whether Affymetrix would be infringing the

Carruthers patents in producing and using amidites in accordance with a license to the Koster patent, defendants' counsel responded, "My understanding is it would infringe from a technological perspective and the question is whether we would be precluded from asserting the patentee rights." Tr. of Oral Argt. at 6–7.

8. Further, the complaint filed in the Delaware District Court in which defendants alleged infringement of the current patents in suit does not, on its face, exempt from suit Affymetrix's use of PerSeptive's amidite products to manufacture oligonucleotides using methods claimed in Patent No. U.S. RE 34,069. Rather, the complaint (which is only five pages long) generally challenges Affymetrix's manufacture of certain products requiring the synthesis of numerous oligonucleotides, using products and processes protected by the patents in suit, and neither supports nor contradicts defendants' argument that this patent dispute is in no way based on use of the amidite products supplied by PerSeptive. It does seek damages for past infringement, however, which would presumably cover the period during which PerSeptive was selling the amidite products to Affymetrix. *See* Kalow Decl. Ex. 11.

and indemnity allegations clearly relate to intellectual property rights, these legal questions are exempted from arbitration under the Agreement. Therefore, given that these claims are properly brought in this forum and taking plaintiff's allegations as true, as we must on a 12(b)(6) motion, plaintiff has clearly stated a claim under the indemnity and warranty provisions of the contract. Defendants' motion to dismiss these aspects of plaintiff's contract claim is denied.

## C. Unenforceability Claims

As discussed earlier, plaintiff has alleged that the patents in suit are unenforceable based on defendants' inequitable conduct in the prosecution of the patents before the PTO. In their motion, defendants argue that plaintiff's unenforceability claims with respect to the '066 patent and its progeny are insufficient as a matter of law. For the following reasons, we find defendants argument unpersuasive and sustain plaintiff's patent unenforceability claims.

### 1. Failure to Disclose Prior Art

■ Patent applicants are required to prosecute patent applications in the PTO with candor, good faith, and honesty. *Molins v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995) (citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). Inequitable conduct occurs when there has been a breach of this duty, including an applicant's failure to disclose material information coupled with an intent to deceive. *Molins*, 48 F.3d at 1178 (citing *J.P. Stevens & Co. v. Lex*

*Tex, Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir. 1984)). To establish inequitable conduct resulting from the failure to disclose prior art, Affymetrix must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and its materiality, and the applicant's failure to disclose the prior art, coupled with the intent to mislead the PTO. *Molins*, 48 F.3d at 1178.

■ In its Amended Complaint, Affymetrix alleges that PE (N.Y.) and Competitive Technologies intentionally failed to disclose prior art to the Patent and Trademark Office ("PTO"), namely a 1980 article entitled "The Synthesis of Oligodeoxypyrimidines on a Polymer Support" ("the Article") that was material to the examination of the '066 and '679 patents. More specifically, Affymetrix alleges that the Article was not submitted in either a prior art statement or an information disclosure statement using the 1449 form approved by the PTO, as it should have been. In their motion, defendants argue that the applicants did disclose the Article to the PTO by mentioning the Article both in a motion to dissolve filed during an interference proceeding[9] brought over the '066 patent application, and in a list of references submitted in connection with the '418 patent prosecution. Defendants argue that the disclosure at the interference was done in such a way as to require the Primary Examiner to consider it, and that because the applicant's disclosures are "inconsistent with an intent to conceal prior art", plaintiff's claim for failure to disclose the Article should be dismissed.[10] *See* Deft.'s Mot. at 12.

9. When the Director determines that an application for a patent interferes with any pending application or unexpired patent, an interference is declared. During the interference proceeding, the Board of Patent Appeals and Interferences determines questions of the priority of the inventions and may determine patentability. 35 U.S.C. § 135(a).

10. In fact, defendants argue that the applicants' motion to dissolve in connection with the interference proceeding on the '066 patent relied heavily on the Article to show that the opposing patent's claimed subject matter was unpatentable in light of the Article. *See* Kalow Decl. Ex. 1; Deft.'s Mot. at 12.

Defendants' argument contains two substantial flaws. First, it requires the Court to look beyond the pleadings to determine the extent of effective disclosure, and weigh whether such disclosure is "consistent" with an intent to deceive. Clearly, such an inquiry is inappropriately made on a motion to dismiss under Rule 12(b)(6). Second, as a matter of law, defendants cannot support the proposition that disclosure of prior art to the Board of Appeals and Interferences during an interference proceeding is effectively the same as disclosure to the PTO during the patent prosecution. In *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1399 (Fed.Cir.1986), in upholding a district court's finding of inequitable conduct for failure to disclose prior art to the Examiner, the Federal Circuit specifically rejected the argument that disclosure during an interference proceeding necessarily rebuts an allegation of concealment. Rather, the Court notes with approval the inference drawn by the district court, namely, that the applicant's citation to the prior art at the interference shows that the applicant understood the materiality of the article to his invention.[11] For these reasons, defendants' motion to dismiss plaintiff's claims for unenforceability based on failure to disclose prior art is denied.

**11.** Defendants endeavor to distinguish *A.B. Dick* on the grounds that the prior art disclosed in the interference proceeding in that case was disclosed in a way that did not necessarily make it available to the Primary Examiner. Here, defendants contend, the disclosure was made in a motion to dissolve, which is accessible by the Primary Examiner. *A.B. Dick*, 798 F.2d at 1399 & n. 7 (citing the district court's observation that the PTO "cannot realistically be thought of as the equivalent (say) of a small law office, in which notice to one person may fairly be deemed notice to all"). Defendants' distinction is unpersuasive, however. They cite no case for

### 2. Patent Misuse and Unenforceability Allegations Regarding the '679 Patent

Affymetrix alleges that defendants knowingly took advantage of the PTO's error of failing to print a terminal disclaimer notice on the face of the '679 patent, by enforcing and licensing the '679 patent beyond the date of its expiration. Defendants' argument with respect to this claim is that the duty of candor to the PTO applies only during the examination of patents, that there is no independent duty to inform the PTO of its clerical errors, and that plaintiff therefore has not stated a claim for inequitable conduct. Defendants' argument clearly mischaracterizes plaintiff's claim, which rests on a theory of patent misuse, and not on the position that there exists an independent duty to notify the PTO of its errors.[12] *See C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed.Cir.1998) (stating that a patent is "unenforceable for misuse when a patent owner attempts to use the patent to exclude competitors from their marketplace knowing that the patent was invalid or unenforceable"); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir. 1986) (citing *Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), for the proposition that patent misuse arises when the patentee has impermissibly broadened

the proposition that disclosure in an ancillary proceeding precludes a finding of inequitable conduct for failure to disclose to the Primary Examiner. Moreover, if burying especially pertinent prior art in a long list of other references can be probative of bad faith, *see Molins*, 48 F.3d at 1184, disclosure in an ancillary proceeding alone may be similarly probative.

**12.** It appears that defendants may have realized this error and abandonded this argument, for there is no mention of it in their reply papers.

the "physical or temporal scope" of the patent grant with anti-competitive effect). Accordingly, defendants' motion to dismiss plaintiff's patent misuse claim is denied.

### 3. Concealment of Best Mode

■ With respect to the '066 patent application, Affymetrix charges that the applicants intentionally concealed the best mode of practicing their invention. Specific evidence cited by Affymetrix to support this argument includes the subsequent filing of another patent application in which applicants disclose the use of a saturated secondary amino group as the preferred embodiment, and the publication by applicants of an article just prior to filing the '066 application that describes the actual best mode. Defendants' objection to the best mode allegations is that the facts described by Affymetrix in its own amended complaint, namely the applicants' actions in publishing an article and filing a second patent application, demonstrate a lack of intent to conceal the true best mode. Defendants argue that the amended complaint therefore fails to satisfy the requirement of pleading an intent to deceive. We find this argument without merit. Rather than disproving an intent to conceal the best mode, Affymetrix's factual allegations go towards establishing a knowing intent to deceive; Affymetrix's specific allegations, if proven, would show that the applicants both failed to disclose the best mode in the prosecution of the patent, yet had explicit knowledge of the best mode. Such facts go towards proving intentional concealment. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 807–08 (Fed.Cir.1990) (describing factual basis for finding of intentional failure to disclose best mode). Defendants' motion with respect to plaintiff's allegations of failure to disclose best mode in the prosecution of the '066 patent is denied.

### D. Motion to Bifurcate

■ Defendants move to bifurcate discovery and trial of the antitrust-related claims pending resolution of the patent infringement claims. In considering such a motion, we consider a number of factors including: (1) economy; (2) the convenience of trying the less complex patent issues first; (3) the expedition served because the patent issues are trial-ready earlier than the antitrust claims; and (4) the avoidance of prejudice and confusion of the issues. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed.Cir.1986). In this case, defendants argue that because a finding that the Carruthers patents are valid and enforceable would render moot plaintiff's antitrust claims, the patent validity and enforceability issues should be resolved first. Plaintiff, on the other hand, argues that even if it did not prevail on the patent claims, it could still prove a violation of the antitrust laws by showing that the defendants enforced the patents beyond their proper scope and term. Affymetrix further asserts that the patent and antitrust claims are so interrelated that bifurcation of discovery and trial would serve neither the interests of economy nor minimizing confusion.

■ We resolve this debate in the following way. As argued by Affymetrix, it would be premature at this early stage in discovery to decide the question of bifurcation in the trial context. Accordingly, defendants' motion to bifurcate trial is denied. However, given the presence of both contract and patent claims, we agree with defendants that full discovery of the antitrust claims would significantly slow the discovery process and impede the progress of this case. Therefore, the parties are at this time limited to discovery relating to the following claims: (1) Affymetrix's claim that it has not infringed defendants' patents and that the patents are invalid

and/or unenforceable (Count One); (2) Affymetrix's contract-related claims (Count Two); and (3) those aspects of Affymetrix's antitrust and unfair competition claims (Counts Three, Four, and Five) directly related to defendants' alleged inequitable conduct and patent misuse. We are specifically carving out for future discovery issues of damages on the patent and antitrust-related claims. Therefore, discovery on such questions as sales and market share, relevant to plaintiff's Sherman Act and related claims, is stayed pending completion of discovery on the contract claims and questions of patent infringement, validity, and unenforceability.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied and defendants' motion to bifurcate discovery and trial is granted in part and denied in part. With respect to the pending motion for partial summary judgment, filed by Affymetrix on April 26, 2002, the schedule proposed in the joint status report dated May 9, 2002, is acceptable to the Court. Accordingly, PE's opposition should be submitted by June 7, 2002, and Affymetrix's reply should be submitted by June 21, 2002.

**IT IS SO ORDERED.**