**Debra IERARDI, Plaintiff–Appellee,**

v.

**Frank SISCO, Defendant–Appellant.**

**No. 1792, Docket 97–7131.**

United States Court of Appeals,
Second Circuit.

Argued March 26, 1997.

Decided July 17, 1997.

184

Dennis C. Vacco, Attorney General of the State of New York, Barbara Gott Billet, Solicitor General, Thomas D. Hughes, Assistant Solicitor General, and Kay–Ann D. Porter and Barbara K. Hathaway, Assistant Attorneys General, New York City, for Defendant–Appellant.

Michael H. Sussman, Mary Jo Whateley and Stephen Bergstein, Sussman, Bergstein, Wotorson & Whateley, Goshen, NY, for Plaintiff–Appellee.

Before: NEWMAN, Chief Judge,
CALABRESI, Circuit Judge, and HURLEY, District Judge.*

HURLEY, District Judge:

Defendant-appellant Frank Sisco ("Sisco") appeals from an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*) which (1) denied his motion for summary judgment regarding state common law tort claims brought by plaintiff-appellee Debra Ierardi ("Ierardi") against him in his personal capacity, and (2) held that Ierardi may pursue a claim against Sisco personally under New York Executive Law Section 296 ("Section 296") even though, *inter alia*, Sisco was not her employer.

We conclude that the state common law tort claims asserted against Sisco, if proven, would be beyond the ambit of immunity provided by New York Correction Law Section 24 ("Section 24") and, therefore, affirm the District Court's denial of summary judgment. With respect to the other issue presented, *viz.* the applicability of Section 296, we decline to exercise pendent appellate jurisdiction.

## I. BACKGROUND

Ierardi was employed as a special education teacher by the New York State Department of Correctional Services ("DOCS") from December 1992 until September 1994, assigned to the Sullivan County Correctional Facility. Sisco was a correction officer assigned to the same facility.

Ierardi alleges that Sisco, beginning in early 1993, subjected her to recurrent sexual harassment, which included (1) commonly addressing her as a "slut" or "bitch," (2) asking her on numerous occasions—often in the presence of others, including inmates—to describe the undergarments she was wearing, and (3) in February or March 1994, "lick[ing] her face" and "touch[ing] her derriere."

Ierardi and Sisco were co-workers at DOCS, neither occupying a supervisory position with respect to the other. Their job responsibilities, however, brought them into frequent contact. Ierardi and the correction officers within the facility, including Sisco, attended weekly meetings to assess inmate programs and often communicated with one another to determine which inmates would be present for special education classes.

Beginning in early 1993, Ierardi complained to her supervisor, Mark Sperber ("Sperber"), as well as Sisco's supervisor, Harvey Baker ("Baker"), that Sisco, and another correction officer, Nelson Hall ("Hall"), were sexually harassing her. Thereafter, she filed a discrimination complaint with DOCS' Office of Affirmative Action, which was dismissed as unfounded. Ierardi resigned her position effective September 16, 1994.

By Complaint filed March 6, 1996, Ierardi commenced the present action against Hall, Sperber, Baker, DOCS and Sisco. Hall and Sisco were sued under 42 U.S.C. § 1983 for having violated her equal protection rights by intentionally engaging in sexual harassment, and Sperber and Baker were charged with violating the same provision of law for condoning the acts of Hall and Sisco. Ierardi further alleged that DOCS, as her employ-

* The Honorable Denis R. Hurley, of the United States District Court for the Eastern District of New York, sitting by designation.

er, violated Section 296, that Sisco committed a battery by touching her against her will, and that "defendants, and each of them, intentionally inflicted emotional distress upon her." (Compl.¶¶ 25–27.)

After discovery was completed, each defendant moved for summary judgment. During oral argument of the motions, plaintiff voluntarily withdrew the cause of action against DOCS, apparently based on a belated realization that the Eleventh Amendment barred the claim.[1] The remaining defendants were granted summary judgment, except for Sisco. As to him, Judge Rakoff concluded that (1) material issues of fact existed as to the claim under 28 U.S.C. § 1983, *see Ierardi v. Hall,* No. 96–CV–1620, slip. op. at 1–2 (S.D.N.Y. Dec. 17, 1996), and (2) "N.Y. Correct. Law § 24, which shields state employees from suits arising from acts done in the discharge of their duties ... does not apply here [as to the plaintiff's state law claims of battery and intentional infliction of mental distress] because the defendants' alleged acts of gender based discrimination, if proven, would fall outside the scope of these defendants' employment."[2] *Id.* at 3.

The trial court also concluded that Sisco would be required to defend against the claimed violation of Section 296, even though that claim was asserted in the Complaint solely against DOCS, as plaintiff's employer. *Id.* The reason, as explained by Judge Rakoff, was that "if the alleged acts of sexual harassment did in fact occur, defendant Sisco must have 'actually participated' in them, [*citing Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995)] and a reasonable jury could find from the evidence that his actions created a hostile work environment in violation of § 296." *Id.*

From the latter two conclusions, *viz.* those that pertain to Section 24 and Section 296, Sisco appeals.

---

1. *See Ierardi v. Hall,* No. 96–CV–1620, slip. op. at 1 n. 1 (S.D.N.Y. Dec. 17, 1996) (citing *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990)).

2. The conclusion by the trial court that Section 24 was inapplicable to the charged conduct pertained to *all* the defendants, as evidenced by the

## II. DISCUSSION

This appeal presents two issues:

1. Whether Sisco, a New York State correction officer, is immune from suit on Ierardi's state common law tort claims of battery and intentional infliction of emotional distress under New York Correction Law Section 24; and

2. Whether Ierardi may pursue a claim against Sisco personally under New York Executive Law Section 296, given that the Complaint is devoid of such a claim against him, and he was not her employer.

### A. *Section 24 of New York Correction Law*

Section 24 provides in pertinent part:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24 (McKinney 1997).

 It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute. *See, e.g., Baker v. Coughlin,* 77 F.3d 12, 14–15 (2d Cir.1996); *Arteaga v. State,* 72 N.Y.2d 212, 221, 532 N.Y.S.2d 57, 62, 527

use of the plural possessive, i.e., "defendants'," in the court's memorandum order of December 17, 1996. As to the defendants other than Sisco, however, the Court determined that each was entitled to judgment as a matter of law, independent of the provisions of Section 24.

N.E.2d 1194, 1198–99 (1988); *Cepeda v. Coughlin*, 128 A.D.2d 995, 996–97, 513 N.Y.S.2d 528, 530 (3d Dep't 1987). Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court. *See Baker*, 77 F.3d at 15.

The statutory protection has been provided to permit correction officers to perform the demanding task of maintaining safety and security within correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function." *Arteaga*, 72 N.Y.2d at 222, 532 N.Y.S.2d at 63, 527 N.E.2d at 1200 (Simons, J., dissenting); *see also id.* at 218–20, 532 N.Y.S.2d at 60–62, 527 N.E.2d at 1196–99. Cognizant of that goal, courts have recognized that the defense of immunity is not necessarily unavailable simply because the challenged conduct is violative of regulations of the Department of Correctional Services, or otherwise beyond an officer's authority. *Cepeda*, 128 A.D.2d at 996–97, 513 N.Y.S.2d at 530 (Section 24 applicable to action against correction officers for allegedly using excessive force in returning inmates to their cells during a disturbance). Indeed, as the New York Court of Appeals observed in *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979):

> no longer is an employer necessarily excused merely because his employees, acting in furtherance of his interests, exhibit human failings and perform negligently or otherwise than in an authorized manner. Instead, the test has come to be " 'whether the act was done while the servant was doing his master's work, no matter how

irregularly, or with what disregard of instructions.' "

*Id.* at 302, 418 N.Y.S.2d at 302, 391 N.E.2d at 1281 (citations omitted).[3]

But the protection afforded by Section 24 is not absolute. The legislature has limited its availability to acts or omissions occurring "within the scope of [an officer's] employment and in the discharge of [his or her] duties." N.Y. Correct. § 24(1).

With the above principles in mind, we turn to the position urged by appellant:

> The sexual harassment alleged herein occurred within the scope of defendant's employment, since it took place in the correctional facility where both worked during foreseeable interactions ... which occurred in the context of both plaintiff's and defendant's job duties.

(Def.-Appellant's Br. at 7.)

Sisco's argument is unconvincing. It places inordinate emphasis on the concept of general foreseeability while giving scant heed to the other *Riviello* factors for determining whether conduct is within an employee's scope of employment. The relevant excerpt from *Riviello* provides:

> Among the factors to be weighed are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

3. *Riviello* did not involve an immunity statute. Rather, the issue there was whether the negligence of an employee was within the scope of his employment and, thus, imputable to his employer under the doctrine of respondeat superior. Although the Court of Appeals' explanation of "scope of employment" was given in that context, it has been routinely employed by New York State courts in determining the parameters of protection afforded by Section 24. *See, e.g., Gore v. Kuhlman*, 217 A.D.2d 890, 890, 630 N.Y.S.2d 141, 142 (3d Dep't 1995); *Cepeda*, 128 A.D.2d at 996, 513 N.Y.S.2d at 530. Section 24, however, provides immunity for actions "within the scope of employment *and* in the discharge of duties."

N.Y. Correct. Law § 24 (emphasis added); *see* Op. at 186. Thus, if an employee's conduct falls outside the scope of employment for purposes of employer liability under respondeat superior, it is clear that the same conduct is not the subject of immunity under Section 24. The inverse is not as clear. There may be conduct that gives rise to employer liability under the New York common law of respondeat superior but which, since it does not fall within the discharge of that officer's duties, is not within the employee's scope of immunity as that term is defined for purposes of Section 24. Because that issue is not before us, however, we express no opinion with respect to it.

47 N.Y.2d at 303, 418 N.Y.S.2d at 303, 391 N.E.2d at 1281.

Neither Sisco nor Ierardi has cited a decision based on New York law explaining under what circumstances, if any, sexual harassment may be deemed generally foreseeable for the purpose of determining immunity under Section 24. However, even if it is assumed—solely for purposes of argument—that the charged conduct falls within the ambit of general foreseeability as that term is used in *Riviello*, it may not be legitimately urged that what Sisco is said to have done is "commonly done" by correction officers, or is other than a marked departure "from the normal methods of performance" utilized by such employees in discharging their duties. *Id.*

▆] In sum, the extent of immunity provided by Section 24 may not be measured merely by reference to the concept of general foreseeability, which Sisco erroneously implies is essentially synonymous with "scope of employment."

The analytical framework provided by *Riviello* is multifaceted. Its proper application mandates that all of the factors identified by the New York Court of Appeals be considered, including the commonness of the conduct under scrutiny within the particular workplace. Properly applied, *Riviello* supports rather than undermines the validity of the decision below.

By way of supplementing his *Riviello*-based argument that the conduct alleged by Ierardi was within the scope of his employment and, thus, immunized, Sisco cites such cases as *Baker* and *Cepeda* as further authority for same proposition. That reliance, however, is similarly misplaced.

The factual recitation in *Baker* is sparse. *See Baker,* 77 F.3d at 14. However, it appears that in *Baker,* and certainly in *Cepeda,* the officers involved were endeavoring to do their job—perhaps poorly—at the time of the charged transgressions. *See Baker,* 77 F.3d at 14; *Cepeda,* 128 A.D.2d at 995, 513 N.Y.S.2d at 529. Thus, in *Cepeda* the court noted:

[W]e observe that the correction officers were actually on duty in the correctional facility performing a basic job function at the time of the incident, i.e., supervising and controlling the activities and movement of inmates. While the use of excessive force against inmates is prohibited by statute ... in actuality, physical force is often required and used to control inmates.... [T]he Court of Appeals has instructed that an employee will be considered within the scope of his employment so long as he is discharging his duties, " 'no matter how irregularly, or with what disregard of instructions' " [citing *Riviello* , 47 N.Y.2d at 302, 418 N.Y.S.2d at 302, 391 N.E.2d at 1281].....

Here, the correction officers were performing a normal and regular duty of returning inmates to their cells.... Custody and control of inmates and the maintenance of prison safety and security are the primary duties and responsibilities of correction officers. It cannot be said that their conduct was outside the scope of their employment.

*Cepeda,* 128 A.D.2d at 996–97, 513 N.Y.S.2d at 530.

▆] In contrast, Sisco's purported sexual harassment of Ierardi was not undertaken in the discharge of his duties. He was not "doing [his] employer's work." *Gore,* 217 A.D.2d at 890, 630 N.Y.S.2d at 142. The previously noted purpose underlying Section 24 (*viz.* to permit correction officers to perform their job functions undeterred by the fear of lawsuits based on state tort claims) is not implicated. If in fact the alleged conduct occurred, it was prompted purely by "personal reasons unrelated to the employer's interest." *Id.* at 891, 630 N.Y.S.2d 141. Under such circumstances, the conduct—although occurring during the course of his employment—is outside the scope of Sisco's employment. *Cf. Spitz v. Coughlin,* 161 A.D.2d 1088, 1089, 557 N.Y.S.2d 647, 648 (3d Dep't 1990) (determining that correction officer's action of opening prisoner's cell to permit two other correction officers to assault prisoner was outside scope of employment for purposes of deciding whether correction officer was entitled to indemnification and counsel fees from the state under New York Public Officers Law § 17). *See generally*

*Kirkman v. Astoria Gen. Hosp.,* 204 A.D.2d 401, 402, 611 N.Y.S.2d 615, 616 (2d Dep't 1994); *Overton v. Ebert,* 180 A.D.2d 955, 956–57, 580 N.Y.S.2d 508, 509 (3d Dep't 1992).

Sisco's purported behavior—as Judge Rakoff correctly ruled—is beyond the ambit of protection provided to correction officers under Section 24.

*B. Section 296 of New York Executive Law*

 As a general rule, a federal court of appeals only has "jurisdiction of appeals from all final decisions of the district courts" that terminate an action. 28 U.S.C. § 1291. The Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), however, recognized that section 1291 also permits appeals from a small category of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." The district court's determination in this case that the immunity provided by Section 24 was unavailable to Sisco constitutes an immediately appealable collateral order under *Cohen. See Baker,* 77 F.3d at 14 n. 2; *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206–07 (2d Cir.1995).

Once an appellate court has taken jurisdiction over one issue in a case, it may, in its discretion, exercise jurisdiction over "an independent but related question that is 'inextricably intertwined' with the [appealable issue] or is 'necessary to ensure meaningful review' of that issue." *Kaluczky,* 57 F.3d at 207 (citing *Swint v. Chambers County Comm'n,* 514 U.S. 35, 50–51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995)). In this case, the question of whether Ierardi may pursue a claim against Sisco pursuant to Section 296 is neither inextricably intertwined with, nor necessary to the resolution of, the appropriate reach of Section 24. Accordingly, we decline to exercise pendent appellate jurisdiction over the Section 296 claim.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying summary judgment, and decline to exercise pendent appellate jurisdiction over the Section 296 claim.