Elias ABREU, Plaintiff,

v.

The CITY OF NEW YORK, New York City Department of Correction, Correction Officer Shaniqua Watson, Sh. 17215, Correction Officer John Doe # 1, Correction Officer John Doe # 2, Correction Officer John Doe # 3, Defendants.

No. 08–cv–1109–ENV–ALC.

United States District Court, E.D. New York.

Sept. 25, 2009.

David Segal, New York, NY, for Plaintiff.

Brian G. Maxey, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

## *MEMORANDUM AND ORDER*

VITALIANO, District Judge.

Plaintiff Elias Abreu brings this action pursuant to 42 U.S.C. § 1983 against defendants the City of New York, the New York City Department of Correction ("DOC"), Correction Officer Shaniqua Watson, and Correction Officers John Does 1–3 (the "John Doe defendants"). Abreu, an inmate at the Anna M. Kross Center (AMKC) on Rikers Island, asserts three violations of his constitutional rights: first, that Watson used excessive force by assaulting him with mace and causing injury to his right hand; second, that Watson and the John Doe defendants conspired to cover up the assault and to deny him medical treatment for his injuries; and third, that the City and DOC (collectively, the "City defendants") are liable under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for failing to train, supervise, or discipline their correction officers concerning the use of mace.

Presently before the Court is the City defendants' motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint—a motion that plaintiff, who is represented by counsel, has not opposed.[1] For the reasons set forth below, the motion is granted and the case is dismissed in its entirety as to all defendants.

## I. BACKGROUND

Plaintiff Elias Abreu was an inmate at AMKC in September 2005. He alleges that at around 12:15 p.m. on September 13, 2005, he was assaulted without provocation by Correction Officer ("CO") Shaniqua Watson. Abreu asserts that Watson sprayed mace in his face, producing severe and permanent personal injuries, and that she assaulted him in an unspecified manner that caused him to fracture his right hand. Following the alleged attack, Abreu says that Watson and several unidentified correction officers, the John Doe defendants, conspired to cover up Watson's wrongdoing and to deny the aid and medical treatment he needed for his injuries.

Approximately two and a half years later, on March 18, 2008, Abreu commenced the instant action and timely served the City defendants with the active complaint. Plaintiff did not, however, serve CO Watson. In various letter motions to Magistrate Judge Viktor V. Pohorelsky dated April 7, June 9, and August 11, 2008, *see* Docket Entry Nos. 2, 3, & 5, and at an initial conference with the Magistrate Judge on November 7, 2008, *see* Docket Entry No. 9, the City defendants raised for the Court's attention—and plaintiff's— that Watson had not been served. On February 12, 2009, with Watson still having not been served, the City defendants moved under Rule 12(b)(6), urging the Court to dismiss the case in its entirety as to all defendants.

## II. DISCUSSION

### A. *Standard of Review for a Motion to Dismiss*

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims for relief, *Bell Atlantic Corp. v. Twombly,* 550 U.S.

---

1. As explained below, the remaining named defendant, Shaniqua Watson, has not been served by plaintiff with a summons and complaint and has not appeared in this action.

544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *see also In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

A court considering a motion to dismiss under Rule 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.,* 517 F.3d 104, 115 (2d Cir.2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted); *see Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (interpreting *Twombly* to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), *rev'd on other grounds,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Finally, where, as here, the plaintiff does not oppose a Rule 12(b)(6) motion, the district court still must determine, as a matter of law, whether the complaint is sufficient to state a claim on which relief may be granted. *McCall v. Pataki,* 232 F.3d 321, 322–323 (2d Cir.N.Y.2000); *Haas v. Commerce Bank,* 497 F.Supp.2d 563, 564 (S.D.N.Y.2007). If the pleading contains sufficient factual matter, accepted as true, to show that the plaintiff may be entitled to relief, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall,* 232 F.3d at 323.

## B. *Plaintiff's Monell Claim Against the City Defendants*

■ Abreu asserts that the City defendants violated his constitutional rights by "their deliberate acts, gross negligence and reckless conduct in failing to adequately train, discipline and supervise [Watson and the John Doe defendants], and in their failure to promulgate and put into effect appropriate rules and regulations applicable to the duties, conduct, activities and behavior of their agents, servants and employees, in the use of Mace." (Compl. ¶ 24.)

■ Following *Monell* and its progeny, a municipality cannot be held liable under § 1983 under a theory of *respondeat superior.* *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Rather, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It is well established that a plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees. *See, e.g., Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 127–130 (2d Cir.2004) (Sotomayor, J.). In this regard, Abreu's complaint succinctly states

one of the core legal concepts animating *Monell* liability. But it does absolutely nothing else. No factual matter of any kind accompanies plaintiff's rote recitation of *Monell.* And the sparse facts that elsewhere make their way into the pleading, and which outline a single, detached incident of misconduct by a few non-policy level officers, in no way suggests a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct. *See Amnesty Am.,* 361 F.3d at 128; *Walker v. City of New York,* 974 F.2d 293, 296–98 (2d Cir.1992); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) ("[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy") *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Plaintiff's naked assertions of liability fall far short of satisfying Rule 8(a)(2) pleading standards and thus cannot survive the City defendants' motion to dismiss.[2] *See Dwares,* 985 F.2d at 100–01 (affirming the dismissal of a conclusory *Monell* claim that "did not allege any facts, other than the [employees'] inaction in the instance complained of, to suggest that there existed such a custom or policy of failure to train"; a "simple recitation that there was a failure to train ... does not suffice to allege that a municipal custom or policy caused the plaintiff's injury"); *Bradley v. City of New York,* No. 08–CV–1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) (dismissing mu-

nicipal liability claim where "[c]omplaint's conclusory, boilerplate language—that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees"— was insufficient to raise an inference of the existence of a custom or policy); *Babayeva v. Queens Hosp. Ctr.,* No. 07–CV–5367, 2009 WL 1605536, at *5 (E.D.N.Y. June 5, 2009) (same).

## C. *Plaintiff's Claims Against Watson*

Abreu asserts two claims under § 1983 against CO Watson. However, because plaintiff has failed to serve Watson in the 11 months between the commencement of this action and the service of the City defendants' motion to dismiss, and because he provides no explanation whatsoever for that neglect, the Court, in its discretion, dismisses his claims against that defendant.

██ Federal Rule of Civil Procedure 4(m) requires that a plaintiff serve all defendants to an action within 120 days after the filing of the complaint. If a plaintiff fails to comply with this time limit but shows good cause for that failure, the Court is required to provide him with additional time for service. *Id.* Where no good cause is shown, the Court has the discretion to dismiss the complaint without prejudice or to order that service be made within a specified time. *Id.; Zapata v. City of New York,* 502 F.3d 192, 196–97 (2d Cir.2007) (holding that district courts have discretion to grant extensions of time to

---

**2.** Of course, defendant DOC must be dismissed for an additional reason even more fundamental than the pleading failures identified above: DOC is an agency of the City of New York and, as such, is not a suable entity. *See* N.Y. City Charter, Ch. 17, § 396 ("[a]ll actions and proceedings for the recovery of

penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law"); *Echevarria v. Dep't of Corr. Servs.,* 48 F.Supp.2d 388, 391 (S.D.N.Y.1999).

serve process even in the absence of good cause). "Ordinarily," a plaintiff faced with a dismissal motion pursuant to Rule 4(m) must "advance some colorable excuse for neglect" to avoid the dismissal of his claims. *Zapata*, 502 F.3d at 198; *Bogle–Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir.2006). Where good cause is lacking, the Second Circuit will not disturb a district court's decision to dismiss "so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata*, 502 F.3d at 197.

▆▆▆ In this case, plaintiff failed to comply with Rule 4(m) because he never served Watson with a summons and complaint within 120 days of the commencement of this action. And in fact, he did not serve her after that window closed, either. As the City defendants correctly point out, the fact that Watson had not been served was raised repeatedly to plaintiff throughout the summer and fall of 2008, leaving no doubt that he was aware of this deficiency. Nevertheless, plaintiff appears not to have made any effort whatsoever to effectuate service at any time in the approximately 11 months before the City defendants moved to dismiss in February 2009. Abreu—who, of course, has not opposed any part of the City defendants' motion—provides no explanation for this failure, and none is evident from the record. Counsel's apparent inadvertence or neglect cannot constitute good cause for an extension and does not excuse the failure of service, here.[3] *See, e.g., Hollomon v. City of New York*, No. 04–CV–2964, 2006 WL 2135800, at *3 (E.D.N.Y. July 31, 2006) (a "delay in service resulting from the mere inadvertence, neglect, or mistake

of a litigant's attorney does not constitute good cause") (quoting *Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y.2000)); *Beauvoir v. United States Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y.2006).

Even where, as here, the plaintiff cannot make a showing of good cause, the Court still has discretion to grant an extension. *Zapata*, 502 F.3d at 196–97. In this case, a decision to withhold an extension and to dismiss the action against Watson undoubtedly would work a hardship on Abreu: while such a dismissal technically would be without prejudice to the filing of a new complaint, his § 1983 claims, which in New York are subject to a three-year statute of limitations, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002), would now be time-barred. Effectively, then, any § 1983 cause of action he might have against Watson would be extinguished. On the other hand, it is "obvious" that Watson would be prejudiced by any *sua sponte* order prolonging plaintiff's opportunity to serve her on claims that accrued more than four years ago and about which she has received no notice. *See Zapata*, 502 F.3d at 198. As the Second Circuit noted in affirming the dismissal of a case in which the facts were closer than they are here, "in the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198 (affirming district court's Rule 4(m) dismissal where, *inter alia*, plaintiff sought a tardy extension of time to serve the defendant); *see also Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir.2002) (affirming dismissal of complaint where the balance of hardships favored the plaintiff but plain-

---

**3.** If it were not already plain, it is worth noting that plaintiff has never requested an extension of time to serve Watson, nor has he

asked during the pendency of this action for any other Court-ordered assistance in effectuating service.

tiff could provide "no even colorable justification" for her late service). Abreu's claims against Watson accordingly are dismissed.

### D. *Plaintiff's Claims Against the John Doe Defendants*

 Finally, Abreu brings a § 1983 claim against three unknown correction officers, the John Doe defendants, who he asserts violated his constitutional rights by conspiring to cover up Watson's assault and denying him medical treatment for his injuries. Because this cause of action is barred by the statute of limitations, it must be dismissed.

 It is well established that " 'John Doe' pleadings cannot be used to circumvent statutes of limitations." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir.1993). Where a plaintiff names "John Doe" as a placeholder defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations period. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–70 (2d Cir.1995). A plaintiff who finds that the limitations period on his claim has run may still seek to amend his complaint to add additional defendants, but he will be bound by the requirement that the proposed amendment "relate back" to the date that the original complaint was filed. Fed. R.Civ.P. 15(c); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir.1996). The fatal problem for a plaintiff who has pled claims against a "John Doe" defendant is that, while "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), ... the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be character-

ized as a mistake." *Barrow*, 66 F.3d at 470. Thus, a plaintiff who "believe[s] that there exist[s] individual defendants who [are] potentially liable for his injuries, but [who does] not know their exact identities" and who waits until after the expiration of the limitations period to remedy this lack of knowledge (by naming a specific individual as a defendant), will find his claim to be time-barred. *Malesko v. Corr. Servs. Corp.*, 229 F.3d 374 (2d Cir.2000) *rev'd on other grounds by* 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).

Here, Abreu's § 1983 claim against the John Doe defendants accrued on September 13, 2005 and has since expired under the applicable three-year statute of limitations. *See Pearl*, 296 F.3d at 79. However, at no point prior to the expiration of the limitations period—and indeed, at no time subsequent to it, either—did plaintiff seek to amend his pleading to substitute named parties for the placeholder John Doe defendants. Nor is there any indication that plaintiff ever even attempted to ascertain from the City defendants the identities of these unknown individuals. Accordingly, his cause of action against the John Doe defendants is untimely and must be dismissed. *Barrow*, 66 F.3d at 468–70; *Aslanidis*, 7 F.3d at 1075.

### III. *CONCLUSION*

For the foregoing reasons, defendants' motion is granted and the complaint is dismissed in its entirety as to all defendants.

SO ORDERED.